## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CORYN SHIFLET, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO. |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| BOARD OF REGENTS OF THE | ) | |
| UNIVERSITY SYSTEM OF | ) | |
| GEORGIA, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## **COMPLAINT**

1.

Coryn Shiflet ("Ms. Shiflet" or "Plaintiff") brings this Complaint against the Board of Regents of the University System of Georgia, ("USG", the "Board", or "Defendant"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e, *et seq.*, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, as amended, the Georgia Fair Employment Practices Act of 1978, as amended, GA Code § 45-19-20, *et seq.* ("FEPA"), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, as amended by the ADA

Amendments Act of 2008 ("ADAAA"). In support of her Complaint, Ms. Shiflet alleges and states the following:

## <u>NATURE OF THE ACTION</u>

Pregnancy is a fact of life for employers and employees alike. Congress recognized that "discrimination against pregnant women is one of the chief ways in which women's careers have been impeded..." and it sought to remedy this endemic discrimination by enacting the PDA to amend Title VII. 123 Cong. Rec. 10, 527 (1977) (statement of Rep. Hawkins). Notwithstanding these efforts, during her employment with USG, Coryn Shiflet experienced precisely the type of pregnancy-related discrimination that the PDA sought to remedy. Specifically, Ms. Shiflet suffered adverse employment consequences - including termination - *after* advising her employer she was pregnant and of her intent to file for FMLA leave following the birth of her child.  In response, Defendant hatched a purported reduction in force ("RIF") due to alleged "budget cuts."  Ms. Shiflet learned from the media that 8 positions were initially targeted for elimination under USG's purported RIF policy.  When Ms. Shiflet inquired, she was advised that 6 positions were targeted for elimination at her office.  Regardless, Ms. Shiflet was the only employee actually terminated from her location.  Unsurprisingly, she was also the

only pregnant employee in her division with a plan to take 12 weeks of FMLA leave - making her the perfect target for the alleged reduction in force.

Moreover, Defendant openly violated its own RIF policy which requires an analysis of competencies, performance and institutional seniority. For example, USG was required to retain regular employees over temporary, provisional or time-limited appointments in the same area. USG ignored its own policy, choosing instead to retain less qualified employees in newly created positions which relied on provisional funding from tuition revenue. In so doing, Defendant interfered with Ms. Shiflet's right to take FMLA, cutting off her access to healthcare and benefits. Put simply, because of Defendant's clear failure to follow its own policy, Ms. Shiflet was left unemployed and no longer had access to her accumulated sick leave. Finally, Ms. Shiflet was entitled to preference for positions as they came open. Although a former colleague left the office, Defendant did not contact Ms. Shiflet about the open position, choosing instead to retain a non-pregnant employee on a part-time basis to work outside normal business hours rather than afford Ms. Shiflet an opportunity to return to work. Even more troubling, Ms. Shiflet commenced an appeal asking Defendant to explain why it deviated from its policy. In response, Ms. Shiflet received a one sentence statement that the decision had been affirmed by a panel composed of the same exact people who kicked her out to

begin with.  This is the exact scenario that the Pregnancy Discrimination Act, Title VII, the Family Medical Leave Act, the ADAAA and corresponding state laws, are designed to protect.

Consequently, Ms. Shiflet brings a Title VII claim, FMLA claims for Defendant's interference with and retaliation against her for exercising her right to obtain leave needed for pregnancy and to care for her newborn son, and for violations of FEPA and the ADAAA through Defendant's actions in discriminating against Ms. Shiflet on the basis of her pregnancy.

## JURISDICTION AND VENUE

2.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1367. This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-5(f)(1), 29 U.S.C. § 2617(a)(2), and 42 U.S.C. § 12117(a)  to secure protection of and redress the deprivation of rights secured by 42 U.S.C. § 2000e *et seq.,* 29 U.S.C. § 2601, *et seq*., and 42 U.S.C. § 12101, *et seq*., providing for relief against gender, pregnancy, and disability discrimination, and retaliation.

3.

Venue is proper in this Court under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) as USG is headquartered in Atlanta, Georgia, is a resident of this

District and, upon information and belief, the discriminatory employment decisions
Defendant made occurred within this District.

## **PARTIES**

4.

Ms. Shiflet is a woman and a resident and citizen of Atlanta, Georgia. Ms.
Shiflet submits to the jurisdiction and venue of this Court.

5.

From January 2018 through October 2020, Ms. Shiflet was an employee of
USG in its University System Office. As such, at all times relevant to this
Complaint, Ms. Shiflet was an "employee," as defined in 42 U.S.C. § 2000e(f) and
29 U.S.C. § 2611(2), and Ms. Shiflet was an individual in "public employment" as
defined in GA Code § 45-19-22(6).

6.

USG is a Georgia state agency that includes 26 public institutions of higher
learning within the state of Georgia. USG is governed by the Georgia Board of
Regents, which oversees the public colleges and universities that comprise the
University System of Georgia. Upon information and belief, USG employs
approximately 20,000 people.

7.

Defendant is an entity subject to suit under 42 U.S.C. 2000e *et seq*., 29 U.S.C. § 2601, *et seq.* as amended, and GA Code § 45-19-20, *et seq.*, and 42 U.S.C. § 12101, *et seq*.  At all times relevant to this Complaint, USG was an "employer" as defined in 42 U.S.C. § 2000e(b), 29 U.S.C. § 2611(4)(A)(iii), GA Code § 45-19-22(5), and 42 U.S.C. § 12111(5), *et seq*.

8.

Defendant USG is a State entity and is subject to the venue and jurisdiction of this Court.  USG has agreed to waive service of a summons in this action pursuant to Federal Rule of Civil Procedure 4(d).

9.

Defendant employs at least fifty (50) persons for each working day during each of 20 or more calendar work weeks in the current or preceding year within 75 miles of Ms. Shiflet's work location.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

10.

On February 26, 2021, Ms. Shiflet filed a timely Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging sex and pregnancy discrimination, as well as retaliation, in violation of

Title VII (as amended by the PDA) and the ADAAA. The facts included in Ms. Shiflet's Charge are the same set of facts supporting her claims for relief under Title VII. Accordingly, since Ms. Shiflet's ADA claim relates to and can reasonably be expected to have grown out of her timely filed Charge, all administrative prerequisites to the filing of this lawsuit have been satisfied.

11.

Ms. Shiflet's EEOC charge was transferred to the Georgia Commission on Equal Opportunity ("GCEO") in May 2021.  On July 21, 2022, the GCEO issued a dismissal based on its inability to conclude whether USG violated FEPA.

12.

On August 30, 2022, the EEOC issued a Right to Sue letter, adopting the GCEO's dismissal.  Ms. Shiflet timely filed her complaint within 90 days of her receipt of the EEOC's Right to Sue letter, thereby satisfying all administrative prerequisites for suit.

13.

On September 2, 2022, Ms. Shiflet entered into a 30-day tolling agreement with Defendant, allowing Ms. Shiflet to file her FMLA claims on or before September 30, 2022, in order to include all claims in one filing.

## STATEMENT OF FACTS

### 14.

On January 3, 2018, Ms. Shiflet began working for USG as a Study Abroad Manager at USG's System Office located in Atlanta, Georgia.

### 15.

At USG's System Office, Ms. Shiflet worked within the International Education Office under the direct supervision of Tammy Rosner, the Director of International Education.  Upon information and belief, approximately 215 people were employed by USG at its System Office location, where Ms. Shiflet worked daily.

### 16.

Ms. Shiflet was highly qualified for her position; she received consistently excellent performance evaluations during her time with Defendant.  Ms. Shiflet was 1 of 10 individuals selected nationally for a Fulbright Award and traveled to Japan for 2 weeks in June 2019 to represent USG as well as co-authored multiple articles in peer-reviewed publications while representing USG.  In addition to her experience and accomplishments in her role at USG, Ms. Shiflet had more seniority within her office than many of her less qualified colleagues.

17.

The International Education Office was within the Student Affairs Department, under the supervision of Joyce Jones, the Vice Chancellor for Student Affairs.  The Student Affairs Department, in turn, was within the Academic Affairs Division, under the supervision of Tristan Denley, the Chief Academic Officer.

18.

Ms. Shiflet became pregnant with her second child during the spring of 2020.

19.

In June 2020, Ms. Shiflet notified her supervisors and Human Resources that she was pregnant with an expected due date in October 2020.  At the same time, Ms. Shiflet notified USG of her intentions to take FMLA leave and utilize vacation and paid sick time she had accrued for the purpose of giving birth and providing care for her newborn.

20.

Specifically, on June 5, 2020, Ms. Shiflet informed her direct supervisor, Tammy Rosner, during a virtual meeting that she was pregnant and of her intentions to take FMLA leave coinciding with her expected due date in October 2020.

21.

On June 11, 2020, Ms. Shiflet emailed Vice Chancellor Jones, copying Tammy Rosner, notifying Jones that she was pregnant.

22.

Around this time and due to Ms. Shiflet's pregnancy, Ms. Shiflet determined that remote work was necessary for the safety of herself and of her unborn child in light of the ongoing COVID-19 pandemic.

23.

On June 17, 2020, Ms. Shiflet emailed Cynthia Okonkwo (Assistant Director of Human Resources) notifying Ms. Okonkwo that her pregnancy was the basis for her COVID Accommodation Request to work remotely.

24.

On July 21, 2020, Ms. Shiflet emailed Andrea Goines (Senior Human Resources Generalist) notifying her of her pregnancy and of her intention to file for leave under the FMLA.

25.

On July 24, 2020, Ms. Shiflet sent another email to Vice Chancellor Jones confirming that due to her pregnancy and COVID Accommodation Request, she would continue to work remotely.   This request was approved, as were other

employees' requests to do the same, and Ms. Shiflet continued to perform her daily duties.

26.

A little over a month later, on September 1, 2020, Ms. Shiflet suddenly received a request to participate in a video call with her supervisor, Tammy Rosner. After joining the call, Ms. Shiflet discovered that Vice Chancellor Jones and Human Resources Director, Quint Hill, were also on the call. Ms. Shiflet was then informed that her position was being "eliminated", purportedly due to a RIF effective October 31, 2020.

27.

During this video call, Ms. Shiflet questioned if USG's "decision" was based on her pregnancy and attendant notification of her intent to take FMLA leave. Ms. Shiflet asked how many other USG System Office employees were being affected by the RIF.

28.

Ms. Hill did not deny that Ms. Shiflet's pregnancy was a motivating factor in the decision to "eliminate" her position. Ms. Shiflet questioned the group further but they refused to provide any explanation as to why Ms. Shiflet was selected for termination.

29.

Ms. Shiflet was told in the video call the day she was being fired that 6 positions were being eliminated in USG's System Office. However, out of the 215 employees working at USG's System Office, Ms. Shiflet was the only individual fired under the RIF.   She was also the only employee who was pregnant and planning to take 12 weeks of FMLA leave.

30.

On September 2, 2020, Ms. Shiflet requested information on how to commence a review of USG's decision to fire her.   She was informed that if she submitted her materials by September 11, 2020, there would be enough time to have her review request considered in October.

31.

Ms. Shiflet complied with the directive she received and on September 11, 2020, she submitted her documentation and a formal request for review of USG's decision to fire her to USG's legal department, outlining in detail how USG had violated its own RIF policy in selecting Ms. Shiflet's position for elimination over other employees.

32.

Ms. Shiflet began to panic as she was worried about supporting herself and her baby after the delivery. Left with no choice, Ms. Shiflet proposed a new employment end date of March 31, 2021, as an alternative to RIF elimination, similar to previously approved employee requests when subjected to a RIF at the USG System Office, which would have allowed her to utilize her accrued leave benefits to support herself after her baby was born, to no avail.

33.

On September 17, 2020, Ms. Shiflet reiterated to her supervisor, Tammy Rosner, during a meeting that she would be moving forward with her FMLA request, notwithstanding her pending request for review of her termination because she was out of time and worried about what might happen.

34.

On September 23, 2020, Ms. Shiflet submitted all necessary paperwork to her supervisor, Tammy Rosner, to complete her FMLA leave request that was scheduled to begin on October 26, 2020, and continue until January 15, 2021.

35.

On September 25, 2020, Ms. Shiflet emailed Andrea Goines (Senior Human Resources Generalist) with information pertaining to her FMLA leave, and for the

first time, Ms. Goines confirmed that her FMLA request would be reviewed and she would follow-up if there were any questions; Ms. Goines refused to respond.

36.

Later that day, Ms. Rosner informed Ms. Shiflet via email that Human Resources told her (Ms. Rosner) to wait to complete Ms. Shiflet's FMLA forms until her RIF review request was completed.

37.

At this point in time, Ms. Shiflet was told her RIF review would be completed well before the start date listed on her FMLA form (October 26, 2020), and that her RIF review request would be discussed on October 13, 2020.  To her detriment, Ms. Shiflet relied on this misrepresentation in her family and financial planning surrounding her delivery date as well as her intended use of accrued sick pay.

38.

On October 5, 2020, Ms. Shiflet emailed USG's legal department objecting to USG's continued stonewalling and its refusal to process her FMLA paperwork. Ms. Shiflet, now in her 39th week of pregnancy, was panicked and now frustrated that USG would not give her the information pursuant to its own policy.  Ms.

Shiflet requested immediate information as to when her RIF review request would be considered and the timeline for her FMLA paperwork.

39.

The same day, Ms. Shiflet received a call from Kate Powers with USG's legal department.  Ms. Powers told Ms. Shiflet that USG was still delaying the process; USG spuriously decided to push back the review of Ms. Shiflet's RIF request to the next Discretionary Review Committee meeting to occur on October 29, 2020.

40.

On October 6, 2020, Ms. Shiflet received an email from USG's legal department informing her that USG was once again delaying review and that her RIF review request would not be reviewed until the November Board Meeting to be held November 11, 2020.

41.

On October 7, 2020 (only 18 days before Ms. Shiflet's planned leave was to begin), Ms. Rosner finally approved her portion of Ms. Shiflet's FMLA request and finally submitted the paperwork to Human Resources.

42.

On October 7, 2020, Ms. Shiflet received confirmation from Ms. Goines that Human Resources had received her FMLA request; further indicating that Ms. Shiflet should expect to hear from Ms. Quint Hill, the USG Human Resources Director, with "next steps."

43.

USG continued to delay. On October 11, 2020, having received no updates, Ms. Shiflet wrote to Ms. Hill asking about "next steps" regarding her FMLA, as Ms. Shiflet's delivery date was imminent, and she was panicked about USG's obvious attempts to interfere with her planned leave.  Later that day, Ms. Hill informally responded indicating that Ms. Shiflet's FMLA request was approved.

44.

On Friday, October 23, 2020, Ms. Shiflet's last day in the office, she finally received a formal notification that her FMLA was approved to start Monday, October 26, 2020, but that it would only be approved for 5 days.  USG refused to allow Ms. Shiflet to take the 12 weeks of leave she requested despite the fact Ms. Shiflet was eligible for the FMLA leave, her RIF review request was still pending, and she timely notified all individuals within her department of her condition and intent to file for FMLA leave.

45.

Ms. Shiflet gave birth on October 30, 2020; she was fired the following day while at the hospital.  Because USG interfered with and refused to allow her the 12 weeks of FMLA leave she was entitled to, Ms. Shiflet was left jobless with a newborn, forcing her to simultaneously care for an infant and seek new employment to support herself and her child.  Furthermore, Ms. Shiflet was deprived of a substantial amount of accrued sick pay which she notified USG she planned to use in accordance with its policies.

46.

Ms. Shiflet was chosen for termination over other employees because of her pregnancy and intention to utilize FMLA leave, in violation of her rights under Federal and State law.

47.

USG's discriminatory intent is evidenced by its blatant disregard and violation of its own RIF policy in selecting Ms. Shiflet for termination over other employees and intentional delay in providing Ms. Shiflet with any information regarding her FMLA leave.

48.

Ms. Shiflet obtained documents via an Open Records Request in October 2020 showing that out of multiple positions projected to be eliminated, Ms. Shiflet was the only person fired under the RIF at the USG System Office location of approximately 215 positions. The documents further confirmed that USG ignored its established and comprehensive policies for implementing a RIF and targeted Ms. Shiflet for termination because she was pregnant and would soon be taking FMLA leave to care for her newborn child.

49.

Specifically, USG's RIF policy states, in relevant part: "In an effort to avoid permanently reducing employees… each institution should analyze the potential cost-savings effectiveness of a temporary reduction of work hours (*e.g.*, temporary layoff, furlough, or other such programs) to achieve the necessary budget reduction.  Employees should only be terminated through a permanent RIF after examining other available alternatives."

50.

Ms. Shiflet was never contacted at any point in time to discuss any alternatives to termination such as temporary layoff or furlough. In Ms. Shiflet's RIF review request, submitted September 11, 2020, she requested documentation

showing any alternatives USG explored before proceeding with her termination. USG ignored Ms. Shiflet's request.

51.

USG's RIF policy further states, in relevant part: "An analysis of the job functions… **must** be conducted.  Where multiple positions in the same job classification exist within the department but only a subset of those positions has been identified for the RIF, **each employee must be evaluated against the same factors**…" (emphasis added).   The factors include: (1) Competencies, (2) Performance, and (3)  Institutional Seniority.

52.

Ms. Shiflet's RIF review request questioned USG's refusal to follow its RIF policy when it selected her for termination.  For example, Ms. Shiflet had more relevant experience (*e.g.*, 12 years of experience in the subject area and a Masters degree in the subject matter), glowing performance reviews during her time at USG, and more seniority than many of her contemporaries who were not subjected to the RIF.

53.

USG's RIF policy states: "All RIF plans are reviewed to avoid adverse impact on employees based on protected classes… The appropriate Human

Resources official will develop the demographic data report to include race, gender, age, disability status, veteran's status for each employee identified in the plan for use in a review."

54.

In further violation of its own policy, USG targeted a pregnant employee who was a member of a protected class and singled Ms. Shiflet out for termination over other employees.

55.

USG's RIF policy requires a 90 day notice of termination when possible, as well as written notice including a statement of the conditions requiring termination, a general description of the procedures followed in making the decision, and a statement of the employee's right to seek discretionary review. USG is directed to engage impacted employees as soon as practical prior to written notice.

56.

USG blatantly ignored these provisions; Ms. Shiflet was informed a mere 45 minutes prior to her written termination notice that her position would be "eliminated." USG never provided Ms. Shiflet with a description of the procedures it followed in making the decision to terminate her, despite her requesting same. USG's disregard for Ms. Shiflet deprived her of financial and family planning and

the ability to utilize her full leave benefits following her pregnancy and childbirth, despite USG's knowledge of the subject RIF in May 2020, at the latest.

57.

USG's RIF policy specifically provides that  positions will be identified for elimination based on institutional and/or departmental needs and regular employees must be retained over employees with temporary, provisional, and time-limited appointments within the same scope/area of impact.

58.

USG deviated again from its own policy and singled out Ms. Shiflet.  Ms. Shiflet was a regular, full-time employee with seniority who should not have been targeted over other employees who were not permanent. USG did not follow this policy because Ms. Shiflet was pregnant and she intended to utilize FMLA leave and accrued vacation/sick pay following the upcoming birth of her child.

59.

An example of USG's discriminatory intent is Ms. Shiflet's colleague, Margaret Mullins, who also worked in the area of International Education.  Ms. Mullins was employed by USG in a conditional role that was provisionally funded by an international study abroad program named "USG Goes Global." Ms. Mullins' temporary, provisionally-funded position should have been subject to the

RIF before Ms. Shiflet's position, which was permanent, and funded by state funds. Moreover, Ms. Mullins did not have the same level of seniority as Ms. Shiflet; Mullins began working at USG 18 months after Shiflet began.

60.

Ms. Shiflet was the only pregnant employee in her division with an announced plan to take her legally protected 12 weeks of FMLA leave, making her the perfect target for termination under the guise of a RIF. USG ignored its own policy governing RIFs and singled out Ms. Shiflet for termination over other non-pregnant employees, in violation of Federal and State law.

61.

One such example is that prior to its knowledge of Shiflet's pregnancy in May 2020, USG intended to eliminate the staff position for "USG Goes Global", the program staffed by Shiflet's colleague, Margaret Mullins. After learning of Ms. Shiflet's pregnancy, USG made the unlawful decision to fire Ms. Shiflet instead.

62.

Ms. Mullins subsequently decided to resign, but rather than afford Ms. Shiflet an opportunity to return to work, USG decided to retain a non-pregnant employee on a part-time basis to work outside normal business hours, in

contravention of its own RIF policy.  Notably, Ms. Shiflet was qualified to perform Ms. Mullin's work duties as well as her own.

63.

USG eventually offered the position with "USG Goes Global" to Ms. Shiflet only *after* receiving communications from Ms. Shiflet's legal counsel.

64.

On November 17, 2020, Ms. Shiflet received a perfunctory letter from Edward Tate, Vice Chancellor of Legal Affairs, flatly denying her RIF review request in a single sentence, affirming the decision to terminate her.  Ms. Shiflet's RIF review request was heard by the same individuals who fired her to begin with and who were accused of discrimination in Ms. Shiflet's review request documents.  To date, USG has refused to provide an explanation for why Ms. Shiflet was singled out for termination.  Defendant has made no attempt to reinstate Ms. Shiflet other than contacting her to see if she wanted to come back after she retained counsel.

## COUNT I
## SEX AND PREGNANCY DISCRIMINATION AND RETALIATION UNDER TITLE VII AND PDA

65.

Plaintiff realleges and incorporates by reference paragraphs 1 through 64 as

if fully set forth herein.

66.

Throughout June and July 2020, Ms. Shiflet notified USG, through her supervisors and human resources personnel, that she was pregnant and due in late October 2020. Once her child was born, she would take 12 weeks of FMLA leave. Approximately 2 months after advising USG supervisors of her pregnancy and intention to take FMLA leave, Ms. Shiflet was fired.

67.

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of sex.

68.

When it adopted the PDA, Congress amended Title VII to provide that discrimination on the basis of sex includes discrimination "on the basis of pregnancy, childbirth, or related conditions."

69.

At all times relevant, Ms. Shiflet was a member of a protected class and Ms. Shiflet was qualified to perform in her position.

70.

The alleged reason given by USG for firing Ms. Shiflet was a RIF.

24

However, USG violated numerous RIF policies in selecting Ms. Shiflet out of 215 employees at USG's System Office - the only USG employee in her division who was pregnant and had disclosed an intention to utilize FMLA leave.

71.

USG's discrimination against Ms. Shiflet and termination of her employment was directly the result of her status as a pregnant female.  These actions violate the PDA as incorporated into Title VII of the Civil Rights Act of 1964.

72.

As a result of this discrimination against Ms. Shiflet, she has suffered damages including, among other things, loss of income and benefits, the loss of her employment and the enjoyment of her job, associated expenses, and emotional distress.  USG's unlawful actions were willful and done in reckless disregard for Ms. Shiflet's Federally protected rights entitling her to an award of punitive damages.

## COUNT II
## FMLA RETALIATION

73.

Plaintiff realleges and incorporates by reference paragraphs 1 through 72 as if fully set forth herein.

74.

The actions of USG alleged herein, including firing Ms. Shiflet for attempting to exercise her right to FMLA leave and attempting to oppose USG in denying her right to appropriate leave, were motivated by an impermissible retaliatory or discriminatory animus such that those actions constitute a violation of 29 U.S.C. § 2615(a)(2).

75.

As a result of its violation of 29 U.S.C. § 2615(a)(2) as alleged herein, USG is liable to Ms. Shiflet for all wages, salary, employment benefits and other compensation denied her by USG, actual monetary losses sustained by Ms. Shiflet as a direct result of USG's violation, and other sums up to 12 weeks of wages and/or salary for Ms. Shiflet, plus interest, liquidated damages, employment, and reinstatement.

**COUNT III**
**FMLA INTERFERENCE**

76.

Plaintiff realleges and incorporates by reference paragraphs 1 through 75 as if fully set forth herein.

77.

USG's failure to timely grant appropriate FMLA leave to Ms. Shiflet upon

request and purposeful delay in processing her FMLA leave paperwork until the last work day before her leave began, constitutes a violation of 29 U.S.C. § 2615(a)(1) for interference with Ms. Shiflet's FMLA rights, insofar as USG denied Ms. Shiflet benefits under the FMLA to which she was entitled including proper notice of eligibility and obligations, structuring her leave time, and use of her accrued vacation and sick pay.

78.

USG interfered with Ms. Shiflet's rights entitled to her under the FMLA by denying her the ability to use up to 12 weeks of FMLA leave after the birth of her child. Instead, USG only granted five days of FMLA leave.

79.

USG further interfered with Ms. Shiflet's rights entitled to her under the FMLA by refusing to reinstate Ms. Shiflet to her prior position or to an equivalent position with substantially similar work and compensation upon Ms. Shiflet's return to work, and terminating her on October 31, 2020.

80.

As a result of its violations of 29 U.S.C. § 2615(a)(1) as alleged herein, USG is liable to Ms. Shiflet for all wages, salary, employment benefits and other compensation denied her by USG, actual monetary losses sustained by Ms. Shiflet

as a direct result of USG's violation, and other sums up to 12 weeks of wages and/or salary for Ms. Shiflet, plus interest, liquidated damages, employment, and reinstatement.

## COUNT IV
## VIOLATION OF FEPA

81.

Plaintiff realleges and incorporates by reference paragraphs 1 through 80 as if fully set forth herein.

82.

The Georgia Fair Employment Practices Act prohibits discrimination in public employment based on sex.  The law applies to public employers with 15 or more employees.

83.

USG is a public employer with 15 or more employees.

84.

USG discriminated against Ms. Shiflet on the basis of her sex by firing her.

85.

USG's proffered reasons for termination are pretextual to hide its motivation: Ms. Shiflet was pregnant and notified Defendant of her intent to take 12 weeks of FMLA leave.

## COUNT V
## VIOLATION OF ADA

86.

Plaintiff realleges and incorporates by reference paragraphs 1 through 85 as if fully set forth herein.

87.

The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., as amended by the ADA Amendments Act of 2008 ("ADAAA") prohibits employment discrimination against individuals with disabilities.

88.

USG regarded Ms. Shiflet as disabled as defined by 42 U.S.C. § 12102(1)(C).

89.

USG terminated Ms. Shiflet because it regarded Ms. Shiflet as disabled due to her pregnancy and upcoming childbirth and retaliated against Ms. Shiflet for making a reasonable accommodation request in violation of §§ 102(a) and (b)(1) and (b)(3) of the ADAAA, 42 U.S.C. §§ 12112(a) and (b)(1), (b)(3), and (b)(5).

90.

The facts alleged in Ms. Shiflet's EEOC Charge are reasonably extended to encompass a claim for a violation of the ADAAA as the facts relied upon for this

claim are the same as the facts relied upon for Ms. Shiflet's Title VII claim.

91.

As a result of this disability discrimination, Ms. Shiflet has suffered damages including, among other things, loss of income and benefits, the loss of her employment and the enjoyment of her job, associated expenses, and emotional distress.  USG's unlawful actions were willful and done in reckless disregard for Ms. Shiflet's Federally protected rights entitling her to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Shiflet demands the following relief:

(a)     Adjudicate and declare that USG violated Ms. Shiflet's rights under Title VII, as amended by the PDA;

(b)     Adjudicate and declare that USG violated Ms. Shiflet's rights under the FMLA;

(c)     Adjudicate and declare that USG violated Ms. Shiflet's rights under FEPA;

(d)     Adjudicate and declare that USG violated Ms. Shiflet's rights under the ADAAA;

(e)     An award of damages in an amount to be determined at trial, plus

prejudgment interest, to compensate Ms. Shiflet for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, and other benefits of employment;

(f)     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Ms. Shiflet for all non-monetary and/or compensatory damages, including, but not limited to, compensation for mental anguish, emotional distress, humiliation, depression, embarrassment, stress and anxiety;

(g)     An award of damages in an amount to be determined at trial, plus prejudgment and post judgment interest, to compensate Ms. Shiflet for harm to her professional and personal reputation and loss of career fulfillment;

(h)     Additional liquidated damages in the amount of the above-requested award, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

(i)     Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to 29 U.S.C. § 2617(a)(1)(B);

(j)     Punitive damages; and

(k)     Attorney's fees, expert witness fees, and costs of this action, pursuant to 29 U.S.C. §  2617(a)(3);

(l)     Such other relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Ms. Shiflet demands a jury trial on the matters alleged herein.

Respectfully submitted this 30th day of September, 2022.

**WORTH JARRELL LLC**

<u>/s/ *Teresa L. Pardiñas*</u>
Kimberly A. Worth
Georgia State Bar No. 500790
kworth@worthjarrell.com
Teresa L. Pardiñas
Georgia State Bar No. 382276
tpardinas@worthjarrell.com
*Attorneys for Plaintiff*

Five Concourse Parkway
Suite 3200
Atlanta, Georgia 30328
Telephone: (404) 760-6016

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies that the foregoing has been prepared in Times New Roman (14 point) font, as required by the Court in Local Rule 5.l (B).

Respectfully submitted this 30th day of September, 2022.

**WORTH JARRELL LLC**

By:   <u>/s/ *Teresa L. Pardiñas*</u>
Kimberly A. Worth
Georgia State Bar No. 500790
kworth@worthjarrell.com
Teresa L. Pardiñas
Georgia State Bar No. 382276
tpardinas@worthjarrell.com
*Attorneys for Plaintiff*

Five Concourse Parkway
Suite 3200
Atlanta, Georgia 30328
Telephone: (404) 760-6016